UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
RONALD VELOCCI,

                Plaintiff,                Docket No.:

  -against-

                                           **COMPLAINT**

ADDISON LEE GROUP, ADDISON LEE
NORTH AMERICA, TANDEM TECHNOLOGIES
FLYTE TYME and TIMOTHY ROSE
in his individual and corporate capacity,

                                           *Jury Trial Demanded*

                Defendants.
------------------------------------------------------------------X

        Plaintiff, **RONALD VELOCCI**, by and through his attorneys, JONATHAN A. TAND & ASSOCIATES, P.C., respectfully, allege upon knowledge as to himself and his own actions, and upon information and belief as to all other matters, as follows:

## I. JURISDICTION AND VENUE

1. This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

2. The unlawful practices alleged herein were committed within the State of New York, County of New York. Accordingly, this action properly lies in the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391.

3. The supplemental jurisdiction of this Court is invoked over Plaintiff's state law and city law claims pursuant to 28 U.S.C. §1367

4.  All administrative exhaustion requirements have been met. Plaintiff filed a timely Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on or about December 12, 2017, and a Right to Sue to letters were issued by the U.S. Equal Employment Opportunity Commission on July 30, 2018 and August 7, 2018.

5.  Plaintiff will have commenced this action within 90 days of her receipt of both Right to Sue letters.

## II.    PARTIES

6.  Plaintiff, Ronald Velocci (hereinafter referred to a "Plaintiff"), is a resident and domiciliary of Merrick, New York. At all relevant times herein, Plaintiff was an "employee" of Defendants as that term is defined by all relevant statutes.

7.  Defendant ADDISON LEE GROUP ("ALG" or "Defendants") is a domestic corporation doing business in the State of New York with offices located in New York County, New York and is an "employer" as that term is defined by all relevant statutes.

8.  Defendant ADDISON LEE NORTH AMERICA ("ALNA") is a wholly owned subsidiary of ALG with offices located in Mawah, New Jersey, and is an "employer" as that term is defined by all relevant statutes.

9.  Defendant TANDEM TECHNOLOGIES ("TANDEM") is a wholly owned subsidiary of ALG with offices located in Woodbridge, New Jersey, and is an "employer" as that term is defined by all relevant statutes.

10. Defendant FLYTE TYME ("FLYTE TYME") is a wholly owned subsidiary of ALG with office located in Mawah, New Jersey, and is an "employer" as that term is defined by all relevant statutes.

11. Defendant TIMOTHY ROSE ("ROSE") is the CEO of ALG, ALNA, Tandem, and Flyte Tyme.

### III.   FACTUAL ALLEGATIONS

12. Plaintiff is a 59-year old Caucasian male of Italian descent. He has been in the ground transportation services industry for over thirty (30) years. Throughout his 33-year career, Plaintiff has developed a stellar reputation within the industry and has cultivated relationships with a wide array of prestigious clients. Plaintiff's job duties included selling the company's business platforms to large businesses and teaching clients to use the business platform. Plaintiff enjoyed a long and distinguished career and worked with many large law firms and fortune 500 companies for the company.

13. On March 17, 2016, Plaintiff commenced employment with Defendants holding the title of Vice President of Sales and Business Development. Despite Plaintiff's exemplary job performance, Defendants targeted Plaintiff and callously discriminated against him on the basis of his national origin, age and disability and retaliated against Plaintiff for speaking out about his concerns.

14. At all times relevant to the matter herein, Timothy Rose was Plaintiff's supervisor. Rose is the CEO of Addison Lee North America and is also the CEO of Tandem. Plaintiff knew Rose professionally for approximately ten (10) years prior to his time employment with Defendants, however Plaintiff had limited interaction with Rose.

15. While Plaintiff worked for Defendants, Rose frequently discriminated against Plaintiff because of his Italian heritage including engaging in a series of stereotypical and racial remarks directed towards Plaintiff.

16. On August 28, 2017, Plaintiff attended a meeting, at which each attendee was asked to introduce themselves.  When Plaintiff introduced himself, he was immediately interrupted by Rose. Rose mocked Plaintiff, claiming that "everyone knows you're a gangster. We all know you are related to the Valachi in the newspaper" (referencing an Italian-American individual who was in the news and accused of being affiliated with organized crime). Rose continued to accuse Plaintiff of being a criminal, going as far as to imply that all Italian-American individuals were mobsters.  Plaintiff was embarrassed and upset by these comments.  The company's HR representative, Reyhan Ucisik was present at this meeting but took no action with respect to Rose's comments.

17.  During lunch that same day, Plaintiff requested an eggplant sandwich. Rose overheard this and continued mocking Plaintiff's Italian heritage by stating: "figures, you Eye-tal-yuns really like that stuff". Rose then insisted that Plaintiff provide him with the Italian word for eggplant. After Plaintiff informed Rose of the Italian word for eggplant, Rose loudly

claimed the Italian word eggplant was a derogatory term used to describe African Americans.

18. On August 30. 2017, Plaintiff spoke with Rose by phone, and confronted him regarding the August 28th incident and the derogatory remarks made towards Plaintiff. In response, Rose told Plaintiff to: "Just get fucking over it" and insisted that Plaintiff apologize for even broaching the subject.

19. In or around September 5, 2017, Plaintiff had meetings with Rose, Peter Cassidy, Defendants' US Commercial Director and Simon Kettle. After a presentation by Mr. Kettle, Plaintiff spoke with Rose about his Plaintiff's large client base and his favorable reputation, explaining that he was a nice guy and had been in the industry for many years. Rose then referred to Plaintiff as an "old timer" and that it was difficult for old timers to find jobs.

20. Rose then inquired about Plaintiff's age. In response, Plaintiff stated that Rose should consult with Human Resources about his age and that Rose should know everything about him since Rose was his supervisor. Plaintiff advised Rose that he and Rose were in the same age group. In response, Rose stated: "Same age group? You're nuts? Don't tell me your as old as those dinosaurs at ETG" (ETG is a competitor of Defendants). Rose then turned to his brother and remarked: "it must be the olive oil", a clear reference to Plaintiff's Italian heritage. Plaintiff was shocked and humiliated by the comments and in response stated to Rose, "Tim we are in the same age group, I'm sure. I'm not old, I'm not a dinosaur,

I'm in great health, feel like a kid and I have a ton of energy. I do more than most half of my age."

21. Shortly thereafter, Rose stated to Plaintiff: "Wait, you're Italian right". Plaintiff responded, "Tim, I have been telling you again and again that I am American. I was born here, but I guess you can say I'm of Italian descent." Plaintiff then addressed prior remarks that Rose made which made Plaintiff feel uncomfortable. Rose then stated "Excuse me? Take the spaghetti out of your ears and listen up".

22. Rose next asked Plaintiff, "What are you on the spectrum"? Plaintiff took this as a reference to autism, as his son suffers from autism a fact that Rose was aware of. Rose further remarked: "what is that antenna? Referring to Plaintiff's hearing aid. Plaintiff explained to Rose that the "antenna" was his hearing aid and the. Rose mocked Plaintiff stating "What the fuck? You're deaf? What the fuck did I inherit here? Now I got a deaf guy? What's next, a fucking he-she? When we get that interpreter we gotta ask about a sign language guy like on TV".

23. Rose then accused Plaintiff of embezzlement, stating "At Concord, you didn't steal $1,000,000 from Chemical Bank or Chase Bank?" Plaintiff was appalled by Rose's statements and informed Rose that he did no such thing. Rose responded by saying "Listen, all you Italians take care of people, it's a fact ok? That's how you get business. It's not based on merit, I know better. Like I told you I'm one step ahead of you."

24. Rose also advised that Plaintiff would be in charge of bringing in clients to use the business platform by "get them sucked and fucked, present anything, get the guy laid…". Thus, Rose implied that Plaintiff should use prostitutes as a way of bringing in business. Plaintiff objected to this activity, making it clear that Plaintiff would not jeopardize his reputation in this manner. Subsequently, Rose again mocked Plaintiff, this time with the slurs "We got a Guinea here with what is that, a moral compass?" and "all you guineas think you can buy your way into heaven? Mike, we will bribe Jesus but not take care of a client".

25. Shortly thereafter, Plaintiff met with Mr. Cassidy who told Plaintiff that he was impressed by his qualifications and work experience. Plaintiff discussed his career experience with Mr. Cassidy who explained that Plaintiff would receive commission payments from Car Service Accounts. As he was leaving the meeting, Mr. Cassidy asked Plaintiff about his age. Plaintiff found this odd because Rose had just asked Plaintiff the same question.

26. Mr. Cassidy informed Plaintiff that he was asking about Plaintiff's age on Rose's behalf. Plaintiff told Mr. Cassiday his age and date of birth and asked if he was at risk of losing his job for any reason. Mr. Cassidy then assured Plaintiff that his job was safe. Plaintiff asked that if he was at risk of losing his job that he be given a few months' notice so that he may find a new job.

27. Plaintiff then asked Mr. Cassidy if he should consult with Human Resources regarding the ongoing discrimination on the part of Rose, explaining that in all of his years of work, he had never experienced such hostility. In response, Mr. Cassidy told Plaintiff to calm down

7

and remarked that "it would be tough for people our age to find jobs". Mr. Cassidy then advised Plaintiff not to contact Human Resources.

28. On September 14, 2017, Plaintiff met with Rose's brother Michael, who was also employed by the Defendants. At the meeting, Plaintiff asked Michael if Rose had an issue with Plaintiff. Michael advised Plaintiff that Rose did not have positive experiences with Italians in the past. Plaintiff asked a few follow up questions but told Michael that he hoped Rose's prior negative experiences with Italian people would not cast a negative reflection on him. Plaintiff then politely asked, that due to Rose's preconceived biases, if he should find another job. In response, Michael told Plaintiff it was his (Plaintiff's) decision whether to stay at in Defendants' employ or look for work elsewhere; specifically telling Plaintiff: "you can either move on or deal with it".

29. On September 27, 2017, Plaintiff attended an event at the Glasshouses located in Midtown Manhattan. The purpose of the event was to announce ADG's merger with Addison Lee North America. At the event, Plaintiff saw Rose and when he greeted him, Rose intentionally mispronounced Plaintiff's last name as "Valachi" in a thinly veiled attempt to mock Plaintiff. Plaintiff politely corrected Rose's pronunciation of his last name in the interest of attempting to salvage his relationship with Rose.

30. Rose then advised Plaintiff to "go mingle with clients" specifically the "Eye-tal-yun" ones. Plaintiff tried to ignore these comments, instead choosing to compliment Rose on his shoes. When Plaintiff inquired as to what brand they were Rose, responded angrily that "I don't

wear that Guinea shit like you Guineas." Offended by that response, Plaintiff walked away from Rose.

31. Plaintiff mentioned the incident to David Boriss, former President of the Defendants. In response Mr. Boriss recommended that Plaintiff stay away from Rose. Later in the evening, Plaintiff asked Rose if pictures should be taken with clients and Rose responded: "No, no, no. I told you we have pictures. Your face will not be in any pictures, got it?". Throughout the evening, Mr. Rose repeatedly gave Plaintiff dirty looks which made Plaintiff uncomfortable.

32. On October 12, 2017, Plaintiff was informed by Peter Cassidy, Commercial Director at ALG that a sales meeting was cancelled. When Plaintiff inquired as to why, Mr. Cassidy claimed that the meeting was cancelled due to a lot of people taking off from work. Plaintiff found Mr. Cassidy's claim to be strange because the nature of the business requires availability on a 24/7 basis.

33. The following day, on October 13, 2017, Plaintiff received a phone call from Mr. Cassidy who informed Plaintiff that he was terminated from his position as Vice President of Sales at Tandem Technologies effective immediately. When Plaintiff inquired as to why he had been terminated from his position, Mr. Cassidy advised him that the company no longer needed anyone to sell technology. This made no sense to Plaintiff because his job duties did not include selling technology. Mr. Cassidy further explained it was not his decision to terminate Plaintiff, and he was merely notifying Plaintiff of his termination and that the

actual decision was made by upper management and the executive board. Cassidy told Plaintiff that he was shocked and surprised by the termination, as Plaintiff was always diligent, knowledgeable and had a great reputation as a salesman. At this point Plaintiff realized that his termination was simply based on Rose's discriminatory animus which the executive board had adopted.

34. Rose's bad behavior did not cease even though Plaintiff was terminated. Upon information and belief, since the filing of the EEOC charge in the instant matter, Rose has called numerous companies and threatened them that should they employ Plaintiff, he would make sure they never received a dime of business from Addison Lee. This forced Plaintiff to go through a long unemployment period which also caused him significant emotional damages.

## IV. CLAIMS FOR RELIEF

### AS AND FOR A FIRST CAUSE OF ACTION

*Unlawful Discrimination on the Basis of Plaintiff's National Origin in Violation of Title VII of the Civil Rights Act of 1964, (Title VII), the New York State Human Rights Law, N.Y. Executive Law § 290 et seq. (NYSHRL) and the New York City Human Rights Law, New York City Human Rights Law, New York City Administrative Code § 8-502(a), et. Seq. ("NYCHRL")*

37. Plaintiff repeats and re-alleges each and every allegation contained herein.

38. Title VII, NYSHRL and NYCHRL prohibit discrimination in the terms, conditions and privileges of employment on the basis of an individual's national origin.

39. At all relevant times herein. Plaintiff was a member of a protected class due to his national origin.

40. At all relevant times herein, Plaintiff was qualified for employment with Defendants and was able to perform the essential functions of the job.

41. Defendants subjected Plaintiff to disparate treatment due to Plaintiff's national origin.

42. Defendants discriminated against Plaintiff in violation of Title VII, NYSHRL and NYCHRL by terminating his employment on the basis of age.

43. Defendants acted intentionally and with malice and reckless indifference to Plaintiff's rights under Title VII, NYSHRL and NYCHRL and are thereby liable to Plaintiff for compensatory and punitive damages under the Title VII, NYSHRL and NYCHRL.

44. As a result of Defendants' discriminatory acts, Plaintiff has suffered and will continue to suffer substantial losses, including loss of past and future earnings and other employment benefits and has suffered other monetary damages and compensatory damages for inconvenience, loss of enjoyment of life, mental anguish, emotional distress, humiliation and loss of reputation.

45. By reason of the foregoing, Defendants have unlawfully discriminated against Plaintiff as concerns his terms, conditions and privileges of employment, in that Defendants have created a hostile work environment, subjected Plaintiff to an atmosphere of adverse acts, and treated him disparately, due to his disability.  These acts by Defendants are in violation of the Title VII, NYSHRL and NYCHRL

46. As a direct result of Defendants' violation of the Title VII, NYSHRL and NYCHRL, Plaintiff has suffered damages, which are set forth more fully below.

47. Based on the foregoing, in: (1) treating Plaintiff differently than his similarly situated non-Italian workers; (2) subjecting him to an adverse employment actions; (3) creating a hostile work environment on the basis of Plaintiff's disability, Defendants violated Title VII of the

Civil Rights Act of 1964, the New York State Human rights Law, (NYSHRL) N.Y. Executive Law § 290 et seq. and the New York City Human Rights Law, New York City Human Rights Law, New York City Administrative Code § 8-502(a), et. Seq. ("NYCHRL").

48. By reasons of the foregoing, Defendants have unlawfully discriminated against Plaintiff based on his national origin in violation of the Title VII, the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL").

## AS AND FOR A SECOND CAUSE OF ACTION

*Unlawful Discrimination on the Basis of Plaintiff's Disability in violation of the Americans with Disabilities Act, 29 U.S.C.§ 621 et. seq., (ADA), the New York State Human Rights Law, N.Y. Executive Law § 290 et seq. (NYSHRL) and the New York City Human Rights Law, New York City Human Rights Law, New York City Administrative Code § 8-502(a), et. Seq. ("NYCHRL")*

49. Plaintiff repeats and re-alleges each and every allegation contained herein.

50. The ADA, NYSHRL and NYCHRL prohibit discrimination in the terms, conditions and privileges of employment on the basis of an individual's disability.

51. At all relevant times herein. Plaintiff was a member of a protected class due to his disability.

52. At all relevant times herein, Plaintiff was qualified for employment with Defendants and was able to perform the essential functions of the job.

53. Defendants subjected Plaintiff to disparate treatment due to Plaintiff's disability.

54. Defendants discriminated against Plaintiff in violation of the ADA, NYSHRL and NYCHRL by terminating his employment on the basis of age.

55. Defendants acted intentionally and with malice and reckless indifference to Plaintiff's rights under the ADA, NYSHRL and NYCHRL and are thereby liable to Plaintiff for compensatory and punitive damages under the ADEA, NYSHRL and NYCHRL.

56. As a result of Defendants' discriminatory acts, Plaintiff has suffered and will continue to suffer substantial losses, including loss of past and future earnings and other employment benefits and has suffered other monetary damages and compensatory damages for inconvenience, loss of enjoyment of life, mental anguish, emotional distress, humiliation and loss of reputation.

57. By reason of the foregoing, Defendants have unlawfully discriminated against Plaintiff as concerns his terms, conditions and privileges of employment, in that Defendants have created a hostile work environment, subjected Plaintiff to an atmosphere of adverse acts, and treated him disparately, due to his disability. These acts by Defendants are in violation of the ADA, NYSHRL and NYCHRL

58. As a direct result of Defendants' violation of the ADA, NYSHRL and NYCHRL, Plaintiff has suffered damages, which are set forth more fully below.

59. Based on the foregoing, in: (1) treating Plaintiff differently than his similarly situated non-disabled-workers; (2) subjecting him to an adverse employment actions; (3) creating a hostile work environment on the basis of Plaintiff's disability, Defendants violated the Americans with Disabilities Act, and the New York State Human rights Law, (NYSHRL) N.Y. Executive Law § 290 et seq. and the New York City Human Rights Law ("NYCHRL").

60. By reasons of the foregoing, Defendants have unlawfully discriminated against Plaintiff based on his disability and/or the perception of disability in that Plaintiff has hearing loss

and wears a visible hearing aid. in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12101 *et seq*., the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL").

### AS AND FOR A THIRD CAUSE OF ACTION

*Unlawful Discrimination on the Basis of Plaintiff's Age in Violation of the Age Discrimination in Employment Act, 42 U.S.C. 12101 et seq., (ADEA), the New York State Human Rights Law, N.Y. Executive Law § 290 et seq. (NYSHRL) and the New York City Human Rights Law, New York City Human Rights Law, New York City Administrative Code § 8-502(a), et. Seq. ("NYCHRL")*

61. Plaintiff repeats and realleges the allegations as if fully stated herein.

62. The ADEA, NYSHRL and NYCHRL prohibit discrimination in the terms, conditions and privileges of employment on the basis of an individual's age.

63. At all relevant times herein. Plaintiff was a member of a protected class due to his age.

64. At all relevant times herein, Plaintiff was qualified for employment with Defendants and was able to perform the essential functions of the job.

65. Defendants subjected Plaintiff to disparate treatment due to Plaintiff's age.

66. Defendants discriminated against Plaintiff in violation of the ADEA, NYSHRL and NYCHRL by terminating his employment on the basis of age.

67. Defendants acted intentionally and with malice and reckless indifference to Plaintiff's rights under the ADEA, NYSHRL and NYCHRL and are thereby liable to Plaintiff for compensatory and punitive damages under the ADEA, NYSHRL and NYCHRL.

68. As a result of Defendants' discriminatory acts, Plaintiff has suffered and will continue to suffer substantial losses, including loss of past and future earnings and other employment benefits and has suffered other monetary damages and compensatory damages for

inconvenience, loss of enjoyment of life, mental anguish, emotional distress, humiliation and loss of reputation.

69. By reason of the foregoing, Defendants have unlawfully discriminated against Plaintiff as concerns his terms, conditions and privileges of employment, in that Defendants have created a hostile work environment, subjected Plaintiff to an atmosphere of adverse acts, and treated him disparately, due to his age.  These acts by Defendants are in violation of the ADEA, NYSHRL and NYCHRL

70. As a direct result of Defendants' violation of the ADEA, NYSHRL and NYCHRL, Plaintiff has suffered damages, which are set forth more fully below.

71. Based on the foregoing, in: (1) treating Plaintiff differently than his similarly situated younger co-workers; (2) subjecting him to an adverse employment actions; (3) creating a hostile work environment on the basis of Plaintiff's age, Defendants violated the Age Discrimination in Employment of the Civil Rights Act of 1964, (ADEA) 29 U.S.C. §621 to U.S.C. § 634  and the New York State Human rights Law, (NYSHRL) N.Y. Executive Law § 290 et seq. and the New York City Human Rights Law ("NYCHRL").

## AS AND FOR A FOURTH CAUSE OF ACTION

*Unlawful Retaliation in Violation of Title VII, ADA, ADEA, NYSHRL, NYCHRL*

72. Plaintiff repeats and re-alleges each and every allegation contained herein.

73. By reason of the foregoing, Defendants have unlawfully retaliated against Plaintiff as concerns his terms, conditions and privileges of employment, in that Defendants created a hostile work environment, subjected Plaintiff to an atmosphere of adverse acts, and treated him disparately because Plaintiff made good-faith and lawful reports of the treatment he

15

suffered. Furthermore, Defendants retaliated against Plaintiff for filing with the EEOC by attempting to prevent him from finding a new job.

**WHEREFORE,** the Plaintiff demands judgment against Defendants for all compensatory, emotional, psychological and punitive damages, liquidated damage, injunctive relief, and any other damages permitted by law pursuant to the above referenced causes of action. It is respectfully requested that the Court grant the Plaintiffs any other relief to which he is entitled, including but not limited to:

1. Awarding reasonable attorney's fees and the costs and disbursements of this action;
2. Granting such other and further relief that to the Court seems just and proper.

**FURTHER,** Plaintiff demands a trial by jury.

Dated: October 26, 2018
      Westbury, New York       Respectfully submitted,

      JONATHAN A. TAND & ASSOCIATES, P.C.
      *Attorneys for Plaintiff*

By: *Jonathan Tand*
    Jonathan A. Tand
    1025 Old Country Road Suite 314
    Westbury, New York 11590
    T: (516) 393-9151
    E: jtand@jtandlaw.com